THOMAS HOOD AND MARTIN P. GALE v. JAMES JUDKINS.

*Assessment— Of personal property—Lumber piled on leased land near railway, awaiting shipment when seasoned—In charge of agent without authority to make sales except on orders from owners— Who reside in a neighboring city in another township, where they keep their office— And where agent makes his reports—Is assessable to the owners in the township where piled— Who are held to "hire" and "occupy" a place for storage for use in connection with said lumber— Within the meaning of sub. 1 of section 11 of tax law of 1882—If such piling is for convenience in loading and shipping—And for mere temporary purposes—Same rule does not apply—Tax roll—Prima facie evidence of assessability of property therein described— Under secs. 19, 47, and 84 of act above cited— Replevin of property seized to satisfy personal property tax—If no claim of payment is made— Warrant of county treasurer authorizing such collection—Issued under sec. 47 of tax law of 1882—Admissible without proof of return by town treasurer of statement of unpaid personal property tax—Required by sec. 44 of same act—It being no concern of plaintiffs whether such return was made or not—Defendant may show, on cross-examination of plaintiffs, payment by them of taxes assessed on lumber piled at same place, for preceding years—As tending to show how they regarded their occupancy of storage ground—Replevin— Will not lie for property seized by tax collector— Under roll and warrant valid on their face— Where it appears that property was assessable in collector's township—Court should direct a verdict for defendant.*

1. Plaintiffs composed a lumbering firm doing business in Mecosta county, Michigan, having their office in the city of Big Rapids, in said county, where *one* of the partners resided. In the spring of 1884 they had a large quantity of lumber piled on *leased* ground at a railway station in the township of Green, in said county, awaiting shipment. They had been in the habit of seasoning their lumber at said station for several years, and a portion of the lumber *first* mentioned had been so piled for two years. The firm had no *office* in said township, and made no *sales* therein, and the agent in charge of the lumber yard had no authority to make sales except as he received

and filled orders sent him by the firm. The firm books were kept at the Big Rapids office, to which said agent made his reports. In May, 1884, the supervisor of the township of Green assessed said lumber to plaintiffs, and the town treasurer seized property to satisfy the tax levied by virtue of said assessment, which was replevied by plaintiffs.

*Held*, that plaintiffs *hired* and *occupied* a place for "storage, for use in connection with the assessed property," in said township, and that the lumber was legally assessable therein under the tax law of 18·2.

*Held*, further, that if the placing of the lumber at said station had been merely for *convenience* in *loading* and *shipping*, and for a *temporary* purpose, it could not be said to be "stored" within the meaning of said statute.

2. Under secs. 19, 47, and 84 of the tax law of 1882, the tax roll is *prima facie* evidence of *all* prior tax proceedings, and of the facts therein stated, and of the *assessability* of the property therein assessed.

3. Plaintiffs replevied certain property from defendant, who held the same by virtue of a seizure under his tax roll and warrant, as town treasurer, to satisfy certain *personal* property taxes assessed against plaintiffs, which they refused to pay. On the trial, after introducing in evidence the tax roll and original warrant, the defendant offered in evidence a statement of uncollected *personal* taxes, taken from his return to the county treasurer, and including those assessed against plaintiffs, with a warrant from the county treasurer thereto attached authorizing their collection, as provided by sec. 47 of the tax law of 1882; to which plaintiffs objected, in the absence of proof of a return by the town treasurer of the unpaid personal property taxes, as required by sec. 44 of the law above cited.

*Held*, that there being no claim on plaintiffs' part of the *payment* of the tax sought to be collected, it did not concern them whether such statement had been made or not.

4. Where plaintiffs were assessed in a township, other than where they resided, for lumber piled in said township at time of such assessment, and it appeared on the trial of a suit involving the validity of such tax, from the direct examination of one of the plaintiffs, that for the two years prior to such assessment plaintiffs had had lumber piled in the same place,—

*Held*, that it was proper on his cross-examination to show the payment by plaintiffs, without protest, of the taxes assessed against them in the two prior years on account of said lumber, as tending to show in what light they regarded their occupancy and use of the premises upon which said lumber was piled and stored.

5. Where, on the trial of a replevin suit for property seized by a town treasurer for the satisfaction of taxes assessed against plaintiffs, it appears that the property was *rightfully* assessed in defendant's town-

ship, and was held by him at time suit was commenced under tax process *valid* on its face, the court should direct a verdict for judgment for defendant, as replevin will not lie in such a case.

Error to Mecosta. (Fuller, J.) Argued May 4, 1886. Decided June 17, 1886.

Replevin. Plaintiffs bring error. Affirmed. The facts are stated in the opinion and head-notes.

*Fletcher & Wanty*, for appellants:

While a tax warrant valid on its face will protect an officer in an action of trespass, in replevin, where he seeks to build up a title to the property, he must show in addition valid proceedings as a foundation for said warrant: *Beach v. Botsford*, 1 Doug. 199; *LeRoy v. East Saginaw City Ry.*, 18 Mich. 233; *Adams v. Hubbard*, 30 Id. 104; *Gidday v. Witherspoon*, 35 Id. 368; *Andrews v. Smith*, 41 Id. 683; *Mathews v. Densmore*, 43 Id. 461.

The treasurer's tax roll was not admissible as evidence of the regularity of all the proceedings, including the assessability of the property, unless made so by statute. Sec. 47, tax law of 1882, makes the tax roll, when returned and filed with the county treasurer, or a duly certified copy thereof, evidence in the same manner and with like effect as the original roll, and the original roll is not made evidence at all. The provisions of sec. 84, that "all records, statements, and certificates shall be *prima facie* evidence of the facts therein set forth," has no reference to this roll, and, under the rule requiring a *strict* construction of these statutes, should not be extended so as to include it; neither does that portion of sec. 84 providing that "all proceedings in assessing or levying taxes shall be presumed to be legal until the contrary is affirmatively shown" make any document evidence, but saves the necessity of showing the regularity of the proceedings in the first instance if the main facts are proved.

Defendant's lien on the property was claimed under a warrant from the county treasurer issued under sec. 47 of the tax law of 1882, which was not admissible without proof of the return required by sec. 44 of same act, which is the foundation of the warrant; and without it the county treasurer has no authority to issue the process. [See head-note 3 for a full statement of these sections.] *Tweed v. Metcalf*, 4 Mich. 579; *Upton v. Kennedy*, 36 Id. 215; *Hogelskamp v. Weeks*, 37 Id. 422.

This warrant, being fair on its face, might protect the treasurer in a suit for trespass, but not in replevin, without proof that it was properly levied. (See authorities cited under first proposition.)

Sec. 84 of the tax law of 1882 does not aid the defendant, because it was not shown that the *return* could not be found in the county treasurer's office. The property was not assessable in the township of Green, under the decisions of this Court. *Monroe v. Greenhoe*, 54 Mich. 9, is a case ruling this, unless the fact that some of the lumber was green when brought into the township, and was left there to season, changes the rule there laid down; and this case differs materially from *Manistique Lumbering Co. v. Witter*, 58 Mich. 625–633.

*M. Brown* and *J. Byron Judkins*, for defendant:

Replevin, if it will lie at all in this case, can be maintained only because there was no jurisdiction to levy the tax: *LeRoy v. East Saginaw City Ry.*, 18 Mich. 233; *Travers v. Inslee*, 19 Id. 98; *McCoy v. Anderson*, 47 Id. 502; *Hill v. Wright*, 49 Id. 230. [Counsel discuss very fully the evidence in the case, and the statutory provisions governing the assessment and collection of taxes.—REPORTER.]

MORSE, J. This is an action of replevin, brought by the plaintiffs, who are copartners, doing business under the style of Hood, Gale & Co., Hood living in Jackson and Gale in Big Rapids. The office of the firm was in Big Rapids.

The suit is brought against the defendant, who was treasurer of the township of Green, Mecosta county, to recover possession of property seized by him to enforce the payment of a tax upon personal property assessed against the plaintiffs in the year 1884.

The main question at issue on the trial was as to the *locality* where certain property ought to have been taxed.

It appears substantially, from the plaintiffs' own showing, that the business of the firm was lumbering. Their lumber was sawed seven miles from the Grand Rapids & Indiana Railroad, and brought to Crapo station, on that road, to ship. They had no mill or store in Green township, within which Crapo station is included.

In October, 1880, the plaintiffs entered into a written contract with Baker & Stearns, whereby Baker & Stearns agreed to cut all the pine on certain lands, and manufacture the same into lumber, and deliver the lumber upon or along the side tracks of the Grand Rapids & Indiana Railroad Company at Crapo. This lumber they were to cross-pile in a good and workman-like manner, and so that it would dry quickly. When delivered as aforesaid, and paid for, it became plaintiffs' property. Baker & Stearns made an arrangement with one Dixon for the possession of some land at Crapo for the purpose of piling the lumber thereon.

In 1881, Baker & Stearns began delivering the lumber, and piling it upon this land. The plaintiffs kept a man at Crapo who saw to the shipping and tallying of the lumber as it was sold by plaintiffs. In 1883, plaintiffs looked after the piling of the lumber, and had it piled so that it would dry and season. They hired about ten acres of ground of one Frank Robbins, and paid him for the use thereof. It was hired for the purpose of piling their lumber thereon.

In the spring of 1884, at or about the time of assessment, there were between five and six million feet of lumber piled on this ground. It was piled there to dry and season, and some of it had been there for two years. The bulk of the lumber piled at Crapo was dry and seasoned before shipment. The firm kept no office there and made no sales there. Their agent who had charge of the yard had no authority to make any sales except as he received orders from the firm. The sales were all made by the firm at Big Rapids or elsewhere, and the orders were sent to the agent at Crapo, who filled them and attended to the shipping. The books of the firm were kept at Big Rapids, and the yard man at Crapo made his reports to the office of the firm at Big Rapids.

The property thus piled and being at Crapo station was assessed in the township of Green, and the tax levied upon it amounted to $936.97.

It is claimed by the plaintiffs that the facts of the case bring it within the decision of this Court in *Monroe v. Greenhoe*, 54 Mich. 9 ; but we do not think so.

Under the tax law of 1882, in force at the time of this assessment and levy, the statute provided that—

"All goods and chattels situate in some township other than where the owner resides shall be assessed in the town where situate, and not elsewhere, if the owner or person having control thereof hires or occupies a store, mill, *place for the sale of property*, shop, *office, mine, farm, storage, manufactory*, or warehouse therein, *for use in connection with such goods and chattels.*"

The italicized words are the addition made to the Compiled Laws of 1871, and were evidently added by the Legislature in view of the rulings of this Court in *Putman v. Fife Lake*, 45 Mich. 125, and *McCoy v. Anderson*, 47 Id. 502.

A copartnership, under the tax law of 1882, was deemed to have its residence where its business was principally carried on.

It is clear in this case, to my mind, that the plaintiffs hired and occupied "storage" in the township of Green for this property, and "for use in connection with" it. The lumber was not moved anywhere else, nor intended to be until sold. This lumber was piled there to dry and season, and it was stored there, not only in the common, but the legal, acceptation of the term. *Loud v. City of Charlestown*, 103 Mass. 278.

In my opinion, the Legislature intended to reach just such cases as the present. Under the decisions heretofore referred to, in 45 and 47 Mich., construing the tax law previous to this enactment of 1882, many wealthy copartnerships and corporations, as a matter of common notoriety, escaped taxation upon their lumber stored and piled and sold and shipped away from their places of residence. If it were to be taxed only at the place of residence of the owner, it could easily be concealed from the assessors; but if taxed in the woods, or at the depots where it was kept until sold, the vigilant assessor would not miss it. The plain and manifest object of the Legislature was to make this kind of property pay its just share of taxation, and for that purpose provided it should be assessed where it was stored for use and sale.

In this case, as in the cases of *Manistique Lumbering Co. v. Witter* and *Same v. Griswold*, 58 Mich. 625, 634, the lumber was not assessed at the home of the owners; thus bearing out the correctness of the idea above suggested, that, without this construction of the intent of this statute, a large amount of property would avoid any taxation. This was no doubt the legislative idea, and the statute was thus enlarged to embrace without question this class of property, and to lessen the burdens of the honest tax-payers.

This case comes within the principles enunciated in the *Manistique Lumbering Co. Cases*, and is governed by them.

In *Monroe v. Greenhoe*, 54 Mich. 9, the facts disclosed that the lumber was brought to the railway station for transit merely, and the owners did not hire any place for storage, as in this case. It was piled in the yard of the party who sawed it for purposes of convenient shipment. It was held that this could not be considered a place of storage occupied by plaintiffs for use in connection with it.

The ruling in that case does not interfere with the ruling of the circuit judge in this case, who instructed the jury that, if they found the lumber was placed at Crapo merely for convenience in loading and shipping, and for a merely temporary purpose, it could not be said to be stored within the meaning of the statute; but if the ground was hired by plaintiffs, and the lumber piled thereon for the purpose of seasoning it, intending it should remain there until seasoned,—making a business of seasoning it there,—deeming it necessary to so dry and season it before sale, then it was stored under the statute.

The judge's charge was right, and in harmony with the decisions of this Court in both the *Manistique Lumbering Co. Cases* and in *Monroe v. Greenhoe*. The jury found the property was stored there. The finding was correct in law and in fact.

It is contended that the tax roll was not admissible, without proof by defendant that plaintiffs were subject to taxation in that township. As we hold, under the undisputed facts and the law of the case, that the property was assessable

in the township of Green, the question of the order of proof becomes immaterial; but we see no reason, under a statute that provides that such roll shall be conclusively presumed to be valid, and shall not be set aside except for certain specified causes, to hold that it shall not be *prima facie* evidence of the facts therein stated, and of its own validity. Sections 19, 47, tax law 1882.

The treasurer's roll was admissible as evidence, *prima facie*, of all the proceedings, including the assessability of the property under the sections above cited, and also under section 84 of the same act.

It is also objected that the defendant was permitted to introduce in evidence the warrant of the county treasurer, without a showing that a return had been made by the township treasurer stating the taxes remaining unpaid upon personal property, as required by section 44 of the act.

There is no foundation for this objection. The property in question was held, at the time it was taken upon the writ of replevin, by virtue of the tax roll, and the warrant thereto annexed. There was no claim upon the part of plaintiffs that this tax had been paid by them, or by any one for them, and therefore it could not concern them in this case whether any such statement had been made or not.

The fact that the plaintiffs paid, without protest, the taxes assessed upon their lumber at this point in 1882 and 1883 was properly admitted upon the cross-examination of the witness Gale, one of the plaintiffs. He had given the history of the plaintiffs' piling and use of this lumber at Crapo since 1881, and had testified, on his direct examination, that the lumber there was not assessed or taxed in the township of Green for the year 1885. It was proper cross-examination under the circumstances, and had a tendency to show in what light the plaintiffs themselves, before this litigation, regarded their occupancy and use of the premises upon which the lumber was piled or stored.

None of the other errors alleged could have been prejudicial to the plaintiffs' case.

It is contended that in the admission of evidence showing that this lumber was not taxed at Big Rapids in 1884, and in

certain remarks made by the court in his charge to the jury, the plaintiffs were prejudiced; but, in our view of the law and the undisputed testimony, the court should have instructed the jury to find a verdict for the defendant as the case stood at the close of the evidence.

We have taken pains to refer specifically to the errors assigned in this case; but when the fact became apparent that this property was rightfully assessed in the township of Green, and was held, at the time suit was begun, under tax process valid on its face, it is evident that all further controversy ought to have ended, as, under the decisions of this Court, the action of replevin could not lie. *Hill v. Wright*, 49 Mich. 229.

The action is prohibited by the statute authorizing it, against property seized under a warrant for the collection of a tax levied by virtue of any law of this State. How. Stat. §§ 8318, 8321.

If the property had not been assessable in the township of Green, then replevin would have been a proper remedy; as, there " being found no statute authority for the assessment and collection of any tax" in that township against the plaintiffs, the case would have been outside the bar of the statute forbidding replevin. *Le Roy v. East Saginaw City Ry.*, 18 Mich. 233; *McCoy v. Anderson*, 47 Id. 505.

But, when the jurisdiction to assess and levy the tax was established, the court could have no further concern with matters affecting the exercise of such jurisdiction, however irregular and invalid they might have been, in the form of action brought in this case.

To hold otherwise would be to make the question of the maintenance of the replevin to depend upon the validity of the tax, and make the statute forbid only those actions of replevin which must equally have failed without the statute. *Le Roy v. East Saginaw City Ry.*, 18 Mich. 237.

The judgment of the court below is therefore affirmed, with costs.

CAMPBELL, C. J., and SHERWOOD, J., concurred. CHAMPLIN, J., took no part in the decision of this case.